IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| L.B.R.P., et al.,<br><br>Petitioner,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, et al.<br><br>Respondents. | CIVIL ACTION<br><br>NO. 26-5346 |

**<u>OPINION</u>**

**Slomsky, J.** **November 3, 2026**

## I. INTRODUCTION

Ten children and three non-profit organizations ("Petitioners") request injunctive relief to prevent, or at least postpone, the children's removal from this country. Petitioners either applied for or obtained nonimmigrant status prior to the Department of Homeland Security ("Respondents") initiating removal proceedings against them. (<u>See</u> Doc. No. 19.) Before Respondents could carry out the removal, Petitioners filed this action challenging the commencement of deportation proceedings against them. (Doc. No. 1.) For the following reasons, 8 U.S.C. § 1252(g) divests judicial review of this matter, and therefore the Amended Complaint (Doc. No. 19) will be dismissed for lack of subject-matter jurisdiction.

## II. BACKGROUND

### A. Factual Background

Petitioners are ten children—L.B.R.P., K.T.N., N.D., C.C., B.S., B.M.M., G.J.C.B., F.Y.C.T., K.Y.H.A., and A.D.H.G. ("Individual Petitioners")—and three non-profit organizations

representing Individual Petitioners. The non-profit organizations are the Jewish Family and Community Services of Pittsburgh ("JFCS"), Hebrew Immigrant Aid Society of Pennsylvania ("HIAS Pennsylvania"), and the Pennsylvania Immigration Resource Center ("PIRC"). (Doc. No. 19 ¶ 2.) Individual Petitioners L.B.R.P., K.T.N., N.D., G.J.C.B., C.C., B.S., B.M.M., and A.D.H.G. hold Special Immigrant Juvenile Status ("SIJS").[1] (Id. ¶¶ 37-42.) They await visa availability that would allow them to apply for lawful permanent residence in the United States.[2] (Id. ¶ 108.)

Petitioner K.Y.H.A. has a pending SIJS application. (Id. ¶ 124.) And Petitioner F.Y.C.T. has a pending T nonimmigrant visa ("T-visa") application.[3] (Id. ¶ 121.) Individual Petitioners fled

---

[1] To qualify for SIJS, applicants must be physically present in the United States, unmarried, and under the age of twenty-one. 8 U.S.C. § 1101(a)(27)(J)(i); 8 C.F.R. § 204.11(c). In addition, before submitting an application to United States Citizenship and Immigration Services ("USCIS"), applicants must obtain an order of dependency from a state juvenile court. Id. That order requires the state court to find:

> (1) that the applicant is "dependent on a juvenile court ... or placed under the custody" of a state agency or someone appointed by the state; (2) that "it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or ... habitual residence,"; and (3) that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law."

Osorio-Martinez v. Att'y Gen. United States, 893 F.3d 153, 169 (3d Cir. 2018) (citing 8 U.S.C. § 1101(a)(27)(J)(i), (ii)).

[2] To be eligible for lawful permanent residence after obtaining SIJS, a visa must be immediately available to the SIJS holder. Green Card Based on Special Immigrant Juvenile Classification, U.S. CITIZENSHIP & IMMIGR. SERVS., https://www.uscis.gov/green-card/green-card-eligibility/green-card-based-on-special-immigrant-juvenile-classification (last visited Oct. 22, 2026). Visas are subject to numerical limitations. Id.

[3] Congress created T-visas as part of the Victims of Trafficking and Violence Protection Act to protect victims of human trafficking. Victims of Human Trafficking: T Nonimmigrant Status, U.S. CITIZENSHIP & IMMIGR. SERVS., www.uscis.gov/humanitarian/victims-of-human-trafficking-t-nonimmigrant-status (last visited Oct. 21, 2026). To qualify for a T-visa, the petitioner must have been a "victim of a severe form of trafficking in persons" and must be physically present in the United States, among other requirements. 8 U.S.C. § 1101(a)(15)(T).

their home countries after suffering abandonment, abuse, or neglect during childhood. (Id. ¶ 2.) Petitioners JFCS, HIAS Pennsylvania, and PIRC provide legal representation to non-citizens in various immigration proceedings. (Id. ¶ 5.)

Individual Petitioners are placed in standard removal proceedings pursuant to 8 U.S.C. § 1229a[4] and face removal to their respective countries of citizenship.[5] (Id. ¶¶ 108, 126-28.) Pursuant to recent changes in Department of Homeland Security ("DHS") and Department of Justice ("DOJ") policies, Individual Petitioners were denied continuances of their removal proceedings, despite either having SIJS or pending visa applications. (Id. ¶ 136.) Upon learning that Individual Petitioners' removal proceedings would not be stayed, Petitioners filed the Complaint seeking injunctive relief to prevent their removal. (See Doc. No. 1.) If removed from the United States, Individual Petitioners cannot complete the process of obtaining nonimmigrant status or permanent residence because physical presence in the country is a prerequisite to eligibility for the immigration status Individual Petitioners seek. (Doc. No. 19 ¶ 146.)

### B. Procedural Background

On July 29, 2026, Petitioners filed the Complaint (Doc. No. 1) against Respondents, alleging constitutional and statutory violations stemming from the institution of removal proceedings against Individual Petitioners. Thereafter, on September 21, 2026, Petitioners filed a Motion for a Temporary Restraining Order, Preliminary Injunction, and a Stay of Agency Action.

---

[4] Section 1229a provides a method for removing noncitizens deemed ineligible to remain in the United States. See 8 U.S.C. § 1229a. Standard removal proceedings pursuant to Section 1229a are adversarial proceedings in which the noncitizen has the right to hire counsel, examine and present evidence, cross-examine witnesses, and appeal the final determination of removal to the Board of Immigration Appeals. Id. § 1229a(b)(4); 8 C.F.R. § 1240.15.

[5] Importantly, filing a T-visa application "has no effect on DHS authority or discretion to execute a final order of removal[.]" 8 C.F.R. § 214.204(b)(2)(i). Nor does the filing of a SIJS application bar enforcement of a removal order. Cortez-Amador v. Att'y Gen., 66 F.4th 429, 433 (3d Cir. 2023).

(Doc. No. 7.) On October 14, 2026, Respondents filed a Response in Opposition to the Motion. (Doc. No. 13.) On October 19, 2026, Petitioners filed a Reply. (Doc. No. 15.) On October 20, 2026, the Latino Community Center ("LCC") filed an Amicus Curiae Brief in Support of Petitioners' Motion for Injunctive Relief. (Doc. No. 18.) Finally, on October 27, 2026, Petitioners filed an Amended Complaint (Doc. No. 19), seeking the same injunctive relief as requested in the original Complaint and adding six Petitioners to the action.

## III. STANDARD OF REVIEW

Subject-matter jurisdiction refers to a court's "power to hear cases." Lightfoot v. Cendant Mortg. Corp., 580 U.S. 82, 92 (2017). Under Federal Rule of Civil Procedure 12(b)(1) a complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). It is a cardinal principle that a court can consider its jurisdiction to hear a matter sua sponte. See, e.g., Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583-84 (1999) (discussing the independent obligation of courts to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from a party to the action). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. See Lincoln Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence." (citing DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006))).

## IV. ANALYSIS

In the Amended Complaint, Petitioners request injunctive relief to enjoin Respondents from carrying out the removal of Individual Petitioners. (See Doc. No. 19 ¶¶ 213-25.) Specifically, they seek a declaration from the Court that Individual Petitioners have "a meaningful opportunity

to complete the SIJ process" and "seek adjudgment of status." (Id. ¶¶ 213-14.) They further request the Court "[d]eclare that Respondents may not deny a continuance" of removal proceedings and, ultimately, to "[e]njoin Respondents . . . from removing [Individual Petitioners] from the United States . . . ." (Id. ¶¶ 215, 222.) Shortly after filing the Complaint, Petitioners filed a Motion for Temporary Restraining Order and other injunctive relief which, in essence, requests the same relief as the Complaint and now the Amended Complaint. (See Doc. No. 7.)

Due to the atypical procedural posture of this action, Respondents noted issues with the Court's jurisdiction in their Response in Opposition to the Motion for Temporary Restraining Order. (Doc. No. 13 at 6-8.) To date, however, the Court has not received a responsive pleading from the Government raising any jurisdictional issues in response to the Amended Complaint. Nevertheless, as noted above, because lack of subject-matter jurisdiction is a non-waivable defect, this Court has an independent obligation to address jurisdiction, and will do so sua sponte.[6] For reasons that follow, the Amended Complaint will be dismissed for lack of subject-matter jurisdiction.

**A. The Court Does Not Have Jurisdiction Over Petitioners' Claims**

The parties have raised in their filings the issue of whether certain jurisdiction-limiting statutes apply here, precluding the Court from exercising jurisdiction over Petitioners' request for injunctive relief to prevent their removal. (Doc. No. 19 ¶¶ 24-29; Doc. No. 13 at 6-8.) Respondents submit three statutory grounds that would divest the Court of jurisdiction: (1) 8 U.S.C. § 1252(g); (2) 8 U.S.C. § 1252(b)(9); and (3) 8 U.S.C. § 1252(a)(5). (Doc. No. 13 at 8-9.) Because Petitioners are, in effect, challenging the government's discretionary decision to institute removal proceedings

---

[6] The United States Supreme Court has considered the applicability of various jurisdictional bars under Section 1252 sua sponte. See Jennings v. Rodriguez, 583 U.S. 281, 315-16 (2018) (Thomas, J., concurring).

against Individual Petitioners, Section 1252(g) deprives the Court of subject-matter jurisdiction to reach the merits of the Amended Complaint.

Congress has substantially limited judicial review of immigration matters. See generally 8 U.S.C. § 1252. Specifically, Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including . . . any . . . habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

The United States Supreme Court held in Reno v. Am.-Arab Anti Discrimination Comm. that Section 1252(g) must be read "narrow[ly]" since it does not cover "the universe of deportation claims." 525 U.S. 471, 482, 487 (1999). In this regard, the Court recognized that the provision applies only to three discrete discretionary actions that the Attorney General may take: (1) the decision to commence proceedings; (2) adjudicate cases; or (3) execute removal orders. Id. at 487. As such, if one of these three decisions is challenged, federal district court jurisdiction is divested, coinciding with Section 1252(g)'s goals of insulating prosecutorial discretion from judicial review. Thus, the issue here is whether Petitioners are challenging Respondents' decision to commence proceedings, adjudicate cases, or execute removal orders against them. If so, the Court is barred from considering Petitioners' claims for lack of jurisdiction.

Petitioners argue their claims fall outside the scope of Section 1252(g) because they are not challenging any discretionary decision. Rather, Petitioners contend they are objecting to an agency-wide practice of ignoring obligations that require a stay of removal

pending the adjudication of Individual Petitioners' SIJS and T-visa applications.[7] (Doc. No. 19 ¶ 29.) Further, Petitioners aver that the challenged actions are directed toward the government's adoption of a policy to categorically order SIJ children to be removed at preliminary hearings, which is not one of the narrowly defined discretionary decisions under Section 1252(g). (Id.) Petitioners' arguments regarding the applicability of Section 1252(g), however, are without merit.

Ultimately, Petitioners' claim is "arising from the decision or action" of Respondents' to commence removal proceedings against them. 8 U.S.C. § 1252(g). Petitioners attempt to reframe the challenged decision as an attack on Respondents' policy of refusing to defer removal until Petitioners' visa applications are fully adjudicated. But the only goal of the Amended Complaint is to halt removal proceedings and execution of removal orders against Individual Petitioners. At its core, Petitioners' requested relief—a stay of removal proceedings pending the adjudication of their visa applications—is a review of the decision to deport them. See Reno, 525 U.S. at 487 (finding the government's refusal to defer alien's deportation arose from the executive branch decision to execute removal orders and is subject to Section 1252(g)); see also Fedorca v. Perryman, 197 F.3d 236, 240 (7th Cir. 1999) (holding that seeking relief in the form of a continuance of deportation was a request for review of a discretionary decision barred by Section 1252(g)). Although Petitioners attempt to evade the consequences of Section 1252(g) by relabeling

---

[7] SIJS applications are required to be adjudicated by the Secretary of Homeland Security within 180 days of the application's filing. 8 U.S.C. § 1232(d)(2). And prior to issuing a T-visa, USCIS makes a bona fide determination verifying a pending T-visa application's completeness and accuracy. 8 U.S.C. § 1227(d)(1); 8 C.F.R. § 214.205. Petitioner K.Y.H.A. filed a SIJS application and removal proceedings were initiated against him prior to the conclusion of the 180-day adjudication period of his application. (Doc. No. 7-1 at 22.) Petitioner F.Y.C.T. is awaiting a bona fide determination from USCIS. (Id. at 74.)

it, in reality their challenge is merely to Respondents' exercise of prosecutorial discretion to initiate removal proceedings.

True, the Third Circuit has found that district courts may consider a purely legal question that does not challenge the Attorney General's discretionary authority. See Garcia v. Att'y Gen., 553 F.3d 724, 728 (3d Cir. 2009) (finding that Section 1252(g) did not bar the court from considering the applicability of a statute of limitations defense). However, Petitioners' claim does not hinge upon a pure legal question. Rather, Petitioners attack the Government's discretionary decision to carry out removal against Individual Petitioners, implicating the jurisdictional bar under Section 1252(g), no matter how narrowly that provision is construed.[8]

In recognition of Section 1252(g)'s protection of prosecutorial discretion, the Court may not interfere with Respondents' decision to institute removal proceedings against Petitioners. And because this Court is one of limited jurisdiction, possessing only that power authorized by the Constitution and statute, Section 1252(g) divests this Court of jurisdiction to hear Petitioners' challenge to executive branch decisions to initiate removal proceedings against them. Thus, a Congressional limitation on judicial review of deportation set forth in Section 1252(g) must be followed "despite its apparent inconvenience to the alien[.]" Heikkila, 345 U.S. at 237.

Consequently, the Court need not reach the merits of Petitioners' request for injunctive relief in the Amended Complaint because "Article III generally requires a federal court to satisfy

---

[8] Additionally, immigration law does not provide a pathway for the type of declaratory and injunctive relief sought here. For example, in Heikkila v. Barber, the United States Supreme Court held that "courts have consistently rejected attempts to use injunctions, declaratory judgments and other types of relief" to contest deportation. 345 U.S. 229, 230 (1953).

itself of jurisdiction over the subject matter before it considers the merits of a case[.]" Ruhrgas, 526 U.S. at 583.

### B. Osario-Martinez is Inapposite

Furthermore, Petitioners challenge the application of Section 1252(g) to their claims by arguing that stripping the Court of jurisdiction would unconstitutionally deprive Petitioners of due process. (Doc. No. 19 ¶¶ 28-29.) Because Petitioners either hold SIJS or have pending nonimmigrant visa applications, Petitioners argue they should be afforded certain constitutional protections requiring the Court to retain jurisdiction over their claims. (Id. ¶ 66.) The Court disagrees.

For support, Petitioners rely on the decision of the Third Circuit Court of Appeals in Osorio-Martinez v. Att'y Gen. United States, 893 F.3d 153 (3d Cir. 2018). There, the Third Circuit held that a jurisdiction-stripping provision violated the Suspension Clause as applied to SIJ designees.[9] Id. at 178. The SIJS designees were held at a federal detention center and sought habeas review after being placed in expedited removal proceedings.[10] Id. at 159. The jurisdiction-stripping provision at issue in Osorio-Martinez was contained in 8 U.S.C. § 1252(e)(2), which constrains habeas review of expedited removal orders. Id. at 164. The Third Circuit held that, as SIJS designees, petitioners were entitled to certain constitutional protections, including the right to invoke habeas review. Id. at 178. Specifically, the court found that under the facts in Osorio-Martinez, that by virtue of

---

9 The Suspension Clause of the United States Constitution states: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. I, § 9, cl. 2.

10 Expedited removal permits the accelerated removal of aliens without a hearing or further judicial review. 8 U.S.C. § 1225(b)(1).

petitioners' SIJ status, depriving the court of jurisdiction would contravene the purpose of the protections afforded to petitioners:

> Because SIJ status reflects Petitioners' significant ties to this country and Congress's determination that such aliens should be accorded important statutory and procedural protections, Petitioners are entitled to invoke the Suspension Clause and petition the federal courts for a writ of habeas corpus. We further conclude that because the expedited removal regime does not provide an adequate substitute process, the INA's jurisdiction-stripping provisions effect an unconstitutional suspension of the writ as applied to Petitioners.

Id. at 167. In essence, Osorio-Martinez enjoined the government from subjecting SIJS designees to expedited removal because accelerated removal procedures lacked sufficient due process protections for persons granted such status.[11]

However, the facts and procedural history of Osorio-Martinez are materially different from the present case for two reasons. First, Petitioners in the present action are not seeking habeas relief, and therefore the Suspension Clause is not implicated in Petitioners' claims. The principal issue in Osorio-Martinez was whether SIJ designees were entitled to invoke the Suspension Clause to obtain habeas relief from the federal courts while placed in federal detention. The Amended Complaint does not request that this Court issue any writ. Rather, it seeks a declaration and an injunction that would provide relief from deportation for Individual Petitioners. (See Doc. No. 19.) Because Petitioners do not raise a challenge to any detention, the constitutional provision at issue in

---

[11] Once an alien has been granted SIJS, Congress has provided statutory protections that may not be revoked without specified process, including judicial review. 8 U.S.C. § 1101(a)(27)(J)(i). In addition, being afforded SIJS provides a host of benefits, including, for example, adjustment of status to become a lawful permanent resident because SIJS holders are "deemed . . . to have been paroled into the United States." 8 U.S.C. § 1255(h)(1). And a SIJS beneficiary's status may not be revoked except "on notice," and upon the Government's compliance with a series of procedural safeguards. 8 U.S.C. § 1155; 8 C.F.R. § 205.2.

Osorio-Martinez has no bearing on Petitioners' constitutional arguments regarding the Court's retention of jurisdiction.[12]

Second, the constitutional concerns that warranted judicial review in Osorio-Martinez are not present here. Central to the court's holding in Osorio-Martinez were the inadequate procedures afforded to petitioners in expedited removal proceedings. But Petitioners here have not been placed in expedited removal proceedings. Rather, Petitioners are subject to standard removal procedures, and therefore the process afforded Petitioners as SIJS holders is sufficient. See Osorio-Martinez, 893 F.3d at 176 ("[T]he rights and safeguards that Congress has legislated for SIJ designees could be duly considered in standard removal proceedings . . .").

In Osorio-Martinez, the consequences of expedited removal operated as a revocation of the statutory and constitutional rights afforded to SIJ beneficiaries by virtue of the substantial legal relationship petitioners developed with the United States, persuading the court to retain jurisdiction over petitioners' claims. 893 F.3d at 172. But the threat of accelerated removal, and the limited procedural safeguards that go with it, are not implicated in standard removal proceedings pursuant to 8 U.S.C. § 1229a. And importantly, even aliens that have been afforded SIJS are removable despite obtaining such status. Cortez-Amador v. Att'y Gen., 66 F.4th 429, 433 (3d Cir. 2023). Nothing in Osorio-Martinez suggests that the Third Circuit intended to guarantee the right to continue removal

---

[12] The Amended Complaint states that eight Individual Petitioners reside in foster homes or in the care of the Office of Children, Youth and Families ("CYF") and are not currently detained in federal custody. (See Doc. No. 19 ¶ 106-16, 128.10-.15.) Individual Petitioners F.Y.C.T. and K.Y.H.A are held in government custody at federally contracted shelters in Allegheny County, Pennsylvania, but they raise no objection to their detention, nor do they seek habeas relief from this Court. (Id. ¶ 119-24.)

proceedings pending the availability of a visa for all children with approved or pending SIJS petitions. Thus, the constitutional concerns of precluding judicial review in the expedited removal context are not implicated in the present case.

In any event, Osorio-Martinez only addressed the narrow issue of the applicability of a jurisdiction-stripping statute as it relates to SIJS beneficiaries facing expedited removal. And only eight of the ten Individual Petitioners hold SIJS.[13] Thus, only these eight Individual Petitioners have developed the "substantial legal relationship with the United States" that confers robust constitutional protections. Osorio-Martinez, 893 F.3d at 172. It follows that the reasoning of Osorio-Martinez is not applicable to the two Petitioners who have not been granted SIJS. Regardless, as explained above, Osorio-Maritnez is not an apt comparison to the present case for all Individual Petitioners.

Accordingly, because Section 1252(g) strips this Court of jurisdiction to review Respondents' decision to institute standard removal proceedings against Petitioners, and there is no serious constitutional problem that would warrant a disruption of that determination, the Amended Complaint will be dismissed for lack of subject-matter jurisdiction. As such, the Court has no occasion to entertain the merits of Petitioners' claims for injunctive relief.

## V. CONCLUSION

For the foregoing reasons, the Amended Complaint (Doc. No. 19) will be dismissed. An appropriate Order follows.

---

[13] As previously noted, the two Petitioners that are not SIJS beneficiaries are K.Y.H.A. and F.Y.C.T. (Doc. No. 19 ¶ 41-42.) K.Y.H.A. has a pending SIJS application, which was filed with USCIS on October 2, 2026. (Id.) F.Y.C.T. filed an application for a nonimmigrant T visa, which has been pending since June 26, 2026. (Id.)